**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**AARON DREW BINKLEY**                                                  **PLAINTIFF**

**V.**                                    **NO. 4-08-CV-01845 GTE**

**ENTERGY OPERATIONS, INC.**                                    **DEFENDANT**

**ORDER GRANTING SUMMARY JUDGMENT**

      Entergy Operations, Inc. ("Entergy") has filed a motion for summary judgment on Plaintiff Aaron Binkley's claims for breach of contract and promissory estoppel. Aaron Binkley ("Binkley") is suing Entergy, his prior employer, for its refusal to reinstate his employment. Binkley was terminated in April 2005 for allegedly falsifying his timesheets.

      Following his termination, Binkley requested a hearing before an Issue Resolution Panel. Entergy refused to follow the Panel's recommendation to reinstate Binkley's employment. Binkley filed this action seeking reinstatement of his employment and removal of certain references from his permanent employment file. In its motion, Entergy denies that its Issue Resolution Policy provided Binkley with any contractual rights. It also contends that Binkley's promissory estoppel claim was filed outside the three year period for initiating such claims.

      On May 5, 2009, the Court issued a Letter Order advising the parties of its finding that the promissory estoppel claim was time-barred, but taking the remaining breach of contract claim under advisement.[1] The Court invited the parties' comments on certain questions posed in the

---

[1] Letter Order, Doc. No. 20.

- 1 -

Letter Order. On May 8, Plaintiff responded to the Court's Letter Order.[2] On May 12, 2009, Defendant responded to the Court's Letter Order.[3] On May 18, 2009, Plaintiff filed a supplemental response opposing summary judgment.[4] All of these submissions will be considered a part of the summary judgment record and have been considered by the Court in reaching a final decision.

Upon review of the entire record in this matter, the Court now concludes that Defendant Entergy is entitled to summary judgment on Plaintiff's remaining breach of contract claim.

**I.    FACTS WITHOUT MATERIAL CONTROVERSY**

Binkley had worked for Entergy at its Arkansas Nuclear One (ANO) facility in Pope County, Arkansas, for approximately 22 years, when, in April 2005, he was terminated for allegedly falsifying his time sheets. Plaintiff claims he kept his time sheets in a manner that was customary at the facility, and which had been approved by at least one of his former supervisors.

Binkley's supervisor at the time of his termination was Howard Ridenour. Ridenour began supervising Binkley in approximately December 2004, when Binkley transferred to a position in maintenance. Ridenour discussed the work and attendance expectations with Binkley prior to Binkley starting to work in the maintenance position.

In January of 2005, Entergy's human resources department began to investigate concerns about locating Binkley during work. Angela Kindrick, a Sr. Human Resources Representative, conducted the investigation. Kindrick investigated and tentatively recommended discharge. Kindrick's recommendation was not followed, and Binkley retained his employment. Entergy

---

[2] Plaintiff's Pretrial Memorandum, Doc. No. 21.

[3] Defendant's Pretrial Memorandum, Doc. No. 22.

[4] Doc. No. 27.

contends that Binkley was not terminated because his supervisor, Ridenour, wanted to give him another chance. Binkley contends that he was not terminated because Entergy had not complied with policies requiring periodic evaluations and lack of documentation.[5] This factual dispute is not material.

In April 2005 Ridenour complained a second time to Kindrick that he could not locate Plaintiff when he was supposed to be at work. Plaintiff disputes this assertion contending that "there is no competent summary judgment to establish this fact." This factual dispute also is not material.

Kindrick opened a second investigation as a result of Ridenour's complaints. In comparing Binkley's time records to his "gate records," Kindrick observed that the records did not match and found that his timesheet reflected more hours worked that his gate records. Kindrick offered Binkley the opportunity to explain the discrepancies. Binkley claimed he filled his timesheets out in advance for a two week period and that he would later reconcile his timesheets and apply vacation time against hours he had failed to work. During this time period Binkley was experiencing health problems, taking medication and sometimes needed to leave work. In April 2005, following this second investigation, Binkely was discharged for falsification of records.

Binkley was advised of his termination in a meeting with Kindrick and Ridenhour. At that time, Kindrick provided Binkley with a copy of Entergy's Issue Resolution Policy ("IRP") and a resolution request form. Kindrick explained the IRP to Binkley. Binkley recalls being advised that if he elected the IRP option and the Panel approved his request, he could get his job back. Binkley contends that this statement was a misrepresentation in that it and the written IRP

---

[5] Kindrick depo, 24, 39-40.

led him to believe that if the IRP Panel granted his request, Entergy would be required to implement his reinstatement and to expunge his record.

Binkley timely (within 15 days) submitted the completed form to initiate a Panel review pursuant to the IRP. He chose a Panel hearing rather than the remaining option of a grievance through line management at the plant. In the request form, Binkley described his "desired resolution" as removing the reference to "falsification of records" from his permanent record and reinstatement at the same classification as a full-time employee with the same years of service and vacation time.[6]

On May 24, 2005, Rebecca Bressler wrote to Binkley. Her letter reads:

Dear Drew,
  Your request to enter into the Issue Resolution Process has been reviewed. The issue as described in your request is appropriate for review. The Human Resources group at ANO will work with you to schedule a date and time for the Panel review. Should you have questions or need assistance with the process, please contact the ANO Human Resources Department.[7]

On June 21, 2005, the Panel issued its finding. Its decision, reflected in a letter signed by the five panel members, states:

Dear Aaron Drew Binkley:

The Issue Resolution Panel has investigated your issue and carefully considered your request for reinstatement of employment.

After investigating and hearing the statements made by you and other witnesses, the Issue Resolution Panel concludes that your request is valid. It is the decision of this panel to grant your requested resolution.[8]

---

[6] Issue Resolution Request, Exh. B to Complaint.

[7] Exh. E to Pl.'s response.

[8] Panel Decision, Exh. C to Complaint.

- 4 -

Binkley made repeated requests to Entergy to implement the decision. Between June 23 and August 15, 2005, Binkley made frequent calls concerning implementation of the Panel's decision. By approximately August 15, 2005, Binkley hired an attorney to assist him in getting the decision implemented. Entergy, upon learning that Binkley had involved counsel, informed him that all further contact concerning his request to return to work would have to go through respective counsel. Binkley had no further contact with Entergy on the issue. As of mid-September 2005, the issue of Binkley's return to work was still under discussion. Ultimately, Entergy refused to implement the decision, stating that Binkley's reinstatement was inconsistent with company policy.

Binkley filed this lawsuit on August 28, 2008. He brings two claims, one for breach of contract and another for promissory estoppel. In his breach of contract claim, he contends that Entergy's failure to follow the Panel's recommendation to reinstate his employment and to delete references to the alleged falsification of records from his employment file constitutes a breach of Entergy's agreement to comply with the procedures set forth in the issue resolution policy. In his promissory estoppel claim, he contends that Entergy promised to comply with its policy and abide by the Panel's decision, that he relied on such promise to his detriment, that he gave up the right to pursue other options, and that Entergy's failure to comply with its own written policy has resulted in a manifest injustice which can be avoided only by enforcing the Panel's recommendations or compensating him for his damages. Binkley claims that he has suffered the following damages: past and future lost wages, increased costs of medical expenses and lost health coverage, loss of vested and anticipated future fringe benefits, including retirement benefits, and damages to his business and professional reputation in light of the alleged grounds for his termination.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when, in reviewing the evidence in the light most favorable to the non-moving party, there is no genuine issue as to any material fact, so that the dispute may be decided solely on legal grounds. *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56. The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial-- whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Eighth Circuit set out the burdens of the parties in connection with a summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> T]he burden on the party moving for summary judgment is only to demonstrate, i.e., "[to] point[] out to the District Court,'" that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.

*Id*. at 1339 (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-74 (8th Cir. 1988) (citations omitted) (brackets in original)).

"A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v.*

- 6 -

*Catrett*, 477 U.S. 317, 323 (1986).  However, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim.  *Id*.

Once the moving party demonstrates that the record does not disclose a genuine dispute on a material fact, the non-moving party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. Rule 56(e).  The plain language of Rule 56(c) mandates the entry of summary judgment against a non-moving party which, after adequate time for discovery, fails to make a showing sufficient to establish the existence of an element essential to its case, and on which that party will bear the burden of proof at trial.  *Celotex Corp.*, 477 U.S. at 322.

## DISCUSSION

### A.    Promissory Estoppel Claim

In its May 5th Letter Order, the Court advised the parties of its ruling that the promissory estoppel claim was time-barred.  The following is an explanation of that ruling.

The parties agree that a three year statute of limitations applies to Binkley's promissory estoppel claim.  *See* Ark. Code Ann. § 16-56-105.  However, they dispute when such claim accrued for purposes of applying the three year limitations period.  Binkley filed this action on August 28, 2008.  His promissory estoppel claim against Entergy is time-barred if such cause of action accrued before August 27, 2005.

"In ordinary tort and contract actions, the statute of limitations begins to run upon the occurrence of the last element essential to the cause of action."  *Chapman v. Alexander*, 307 Ark. 87, 817 S.W.2d 425 (1991).  The promise that Binkley seeks to enforce is Entergy's representation that if the Panel voted in Binkely's favor his employment would be reinstated.

- 7 -

Entergy argues that as early as June 23. 2005, Binkley knew that Entergy did not consider itself bound by the Panel decision.  Binkley argues that his cause of action did not accrue until he knew or reasonably should have known that Entergy was not going to follow the Panel's decision and reinstate his employment.  The Court holds that Binkley reasonably should have known prior to August 27, 2005, that Entergy did not consider itself bound by the Panel's decision and instead was looking to Jeff Forbes to determine whether the Panel recommendation would be followed and Binkley would get his job back.

On June 21, 2005, the Panel issued its decision in Binkley's favor.  On June 23, 2005, Binkley learned of the Panel's decision.  He was told at that time that Mr. Forbes had a question on trustworthiness and that there might be an issue with "badging."[9]  Thereafter, Binkley made repeated phone calls in an effort to get Entergy to implement the Panel's decision.  He was unsuccessful.  On July 14, 2005, Binkley spoke with Mike Merrit regarding implementation of the Panel's decision.  In a hand-written note, Binkley described the conversation, noting that it was "decision making time" in Merrit's words, and that they were waiting on Jeff Forbes to make the decision.  Binkley specifically noted that Forbes was concerned with "badging" at ANO.[10]  By at least this time, Binkley was, or should have been aware, that Entergy felt no obligation to follow the Panel's decision.

While it is unnecessary to determine the precise point in time that all the elements were present for a promissory estoppel cause of action, the Court concludes as a matter of law that the

---

[9] Binkley depo., at p. 95-98, Exhibit A to motion

[10] Binkley depo., at p. 105-106, Exhibit A to motion; a copy of the note is attached as an exhibit to the deposition.

claim began to accrue before August 27, 2005.  Accordingly, Binkley's promissory estoppel claim is time-barred.

### B.  Breach of Contract

Brinkley contends that Entergy breached its IRP by failing to implement the Panel's recommendation to reinstate his employment.  At the time of his termination, it is undisputed that Binkley was an at-will employee.  Two policies are relevant to his claim: (1) Entergy's "at-will" employment policy; and (2) its issue resolution policy or IRP.  Both policies are set forth below.

Entergy's at-will employment policy states:

- All employees of the Company are employees at will and are free to resign at any time with or without reason or notice.  The Company retains the right to terminate an employee's employment at any time with or without reason or notice.

. . .

- The Senior Vice President of Human Resources must approve any deviations from this Policy and has the authority to enter into a binding agreement abrogating the employment at will doctrine specified in this Policy.

. . .

1.0   PURPOSE AND APPLICABILITY

The purpose of this document is to establish Entergy's Policy regarding voluntary and involuntary termination of employment for all Entergy employees.  The intent of this Policy is to maintain employment at will to the fullest extent of the law for all Entergy employees, except where expressly modified by a Collective Bargaining Agreement or an agreement signed by the Senior Vice President, Human Resources & Administration.

A copy of Entergy's at-will policy is found in Entergy's motion for summary judgment as an attachment to Exhibit A, Plaintiff's deposition..

Entergy's IRP is set forth in an eight page document, entitled, "Entergy System Policies & Procedures."  The policy states in pertinent part:

- 9 -

### I.  Policy Summary

- This Policy provides all regular full-time, Nonbargaining Employees with a process to raise and resolve issues and to seek redress while ensuring proper treatment to employees who use the process.

- Issues which can be addressed through the process are limited to the following:
    - performance rating of unsatisfactory or improvement required;
    - disciplinary action; and
    - termination (excluding certain offenses listed below).

- The process to resolve disputed issues generally involves three steps.  If the issue is not resolved in the first or second steps, the employee who seeks resolution must choose between continuing the resolution process with line management or requesting an issue Resolution Panel in the third step of the process.

- An Issue Resolution Panel consists of five employees who are trained to hear, investigate, and decide issues brought to it.  An employee who seeks to resolve a disputed issue and elects to pursue resolution with a Panel will present his/her case before the Panel.

- Proposed resolutions must be consistent with existing Company policy and procedures.

. . .

**3.5** **Issue Resolution Panel** is defined as a Panel of five employees as outlined in Section 5.7.1 of this Policy.  The Panel will be qualified and trained to hear, investigate, and decide issues brought to it.  The BU Director of Human Resources will serve as a facilitator and is not a voting member of the Panel.

. . .

**5.0**   **DETAILS**

**5.1**   Program Intention - This program is intended to assure all employees the opportunity to express differing concerns in good faith, to have these concerns heard and considered

       impartially, and to be protected from retaliation in any form.

**5.2**    Eligibility of Issues - Issues which can be addressed through the Issue Resolution program are limited to the following: performance rating of unsatisfactory or improvement required, disciplinary action, or termination. This Policy excludes from the availability of the Issue Resolution program those terminations based on the following offenses, if, prior to termination, the offense was thoroughly investigated, as determined by the Sr. Vice President of Human Resources & Administration:

    **5.2.1**   threats to national security;
    **5.2.2**   threats to intentionally harm the environment;
    **5.2.3**   safety violations that management determines have resulted or could result in death or serious injury;
    **5.2.4**   potential or actual unethical or illegal behavior, including, but not limited to, acts of fraud, theft, bribery, workplace violence or market manipulation;
    **5.2.5**   harassment, discrimination or retaliation in violation of the Company's Harassment Prevention or Equal Employment Opportunity policies.

    . . .

**5.7.3**    <u>**Panel Parameters**</u>

    **5.7.3.1**    The Panel cannot establish or alter Company policy, set rates of pay, decide promotions, appeal selection decisions, or change work rules.

    **5.7.3.2**    The Issue Resolution Panel determines whether the policies or practices were applied fairly, but it does not set or alter policies. It is the responsibility of the BU Director/VP of Human Resources to resolve the issue.

    . . .

**5.9**    <u>**Issue Resolution Closure**</u> - The BU Head is responsible for implementation of a Panel decision . . . If the decision entails reinstatement to the same or an equivalent position, the BU Head is responsible for implementing any negotiated agreements between the BU Director/VP of Human Resources and the employee.

      5.10    **Remedies** - The proposed resolution must be consistent with existing Company policy and procedures.

A complete copy of the IRP is attached as Exhibit C to Binkley's response.

Entergy argues that the IRP did not modify its at-will employment policy. Binkley disagrees, contending that Entergy agreed to abide by the Panel's determination regarding Binkley's employment and was obligated to follow its recommendation of reinstatement.

Entergy's Director of Human Resources, Becki Bressler, has submitted an affidavit explaining that she should not have permitted Binkley's discharge to be reviewed. She states:

> 10. When Mr. Binkley asked for Panel [sic] pursuant to the IRP, I reviewed the request and it simply did not occur to me at the time that his discharge should not have been reviewed because it was excluded from consideration under § 5.2.4. When Mr. Forbes raised this issue after the Panel decision, I agreed with his assessment.
> 11. As the Director of Human Resource I receive the Panel recommendation and am tasked with working with line management to implement the decision. Mr. Forbes however stated that he believed that the Panel recommendation was inconsistent with other applicable policies. First, Section 5.7.3 dictates that the Panel cannot alter or establish company policy or change work rules. Based on the admitted fact that Mr. Binkley turned in timesheets that he knew were incorrect at the time that resulted in him being paid wages for hours not worked, reinstatement was against our discipline policy and our absenteeism policy and raised serious questions regarding his trustworthiness. Sections 5.9 and 5.10 of the IRP placed the final decision on whether to accept or reject the Panel recommendation squarely with Entergy management. (BU Head is a generic title used within the policy to describe the ranking management official in any given business unit within the company. Titles may vary from location to location. I was not the "BU Head" referred to in the IRP). Ultimately Entergy management agreed that reinstatement was against these policies and would not be accepted.

Bressler's affidavit is attached as Exhibit C to Entergy's summary judgment motion.

Ms. Bressler also explains why Binkley's termination caused him to lose his authorization for unescorted access at Nuclear One:

> 12. Additionally, all employees must be granted security access under the company's Unescorted Access Authorization Program, policy number

> EN-NS0101 ("UA") before they can work at ANO Nuclear Power Station. Under this policy, when Mr. Binkley was discharged his access authorization at ANO was withdrawn. In every case we must evaluate the trustworthiness and reliability of the applicant for access authorization before granting unescorted access. Under the policy, wilful or intentional acts or omission or untruthfulness, would be grounds for denial of unescorted access. In fact, after reviewing the facts leading to Mr. Binkley's discharge, Mr. Forbes stated that Mr. Binkley was not trustworthy.

In its Letter Order, the Court asked the parties to comment on whether the lack of such access effectively prohibits his reinstatement. Plaintiff, in his letter response, acknowledges that he lost his authorization for unescorted access when he was terminated and that all employees at ANO must have unescorted access authorization. The record is now clear that lack of unescorted access authorization does in fact prohibit Binkley from working at ANO in any capacity.

On this factual record, Binkley contends that he is entitled to recover damages for lost salary, lost retirement benefits, lost insurance coverage, and damage to reputation. All of these damages are the result of Binkley's termination. Binkley seeks no damages for Entergy's several month delay in making its decision not to follow the Panel's recommendation and does not claim that he changed his position in reliance on Entergy's alleged promise to follow the Panel's recommendation.[11]

Binkley is claiming that Entergy violated a post-termination grievance or appeal process, but seeking a remedy that would restore him to his pre-termination status. There is, in the Court's view, a problem with the "fit" between the alleged breach and the remedy Binkley seeks in this case. Because he seeks damages for wrongful termination, Binkley must prove that

---

[11] It is therefore unnecessary to answer the question of whether Entergy's alleged breach of its IRP might form the basis for a breach of contract claim if Plaintiff were seeking such damages.

something changed between the time of his termination, when he was employed at-will, and the point in time at which the Panel recommended his reinstatement, at which time Binkley claims he was entitled to be restored to full-time employment with all corresponding benefits and privileges.  If Binkley was still an at-will employee when the Panel recommended his reinstatement, any "right" to reinstatement would be meaningless because Entergy could reinstate him and immediately terminate him and be within its rights in doing so.  For Plaintiff to prevail on his claim for damages resulting from his termination, the Court must find that the IRP created an exception to Entergy's clearly established policy of at-will employment.  The Court is unable to do so.

It is undisputed that at the time of his employment Binkley was an at-will employee.  As such he could have been fired "for any reason, no reason, or even a morally wrong reason." *Ball v. Ark. Dept of Community Punishment*, 340 Ark. 424, 430, 10 S.W.3d 873, 877 (2000).  The Arkansas Supreme Court has recognized that "an express provision against termination for cause" in a personnel manual may alter an employee's at-will status.  *Gladden v. Arkansas Children's Hospital*, 292 Ark. 130, 728 S.W.2d 501 (1987).  It has also admonished that "implied provision against the right to discharge is not enough." *Id.*, 292 Ark. at 136, 728 S.W.2d at 505.

Binkley contends that Entergy, through its written IRP, which was reaffirmed by the conduct and actions of its employees, provided him with "clear and definite statements that the Issue Resolution Policy would be honored."[12]   Binkley also argues that "Entergy created a

---

[12] Plaintiff's brief at 12, Docket No. 15.

reasonable expectation on the part of Mr. Binkley that it would in fact follow its policy and reinstate him if the Panel found in his favor" created an enforceable right to reinstatement.[13]

Binkley relies on *Crain Industries, Inc. v. Cass*, 305 Ark. 566, 810 S.W.2d 910 (1991). In *Crain*, laid-off employees sued their employer, claiming that it failed to honor an employee handbook provision stating: "In the event it should become necessary to reduce the number of employees in the work force, employees will be laid off on a seniority basis by department. The last hired would be the first to be laid off. This policy will be adhered to with one possible exception; that is, under circumstances where the efficiency of a department would be impaired by the loss of some particular employee's skill."[14] The employee plaintiffs were laid off as part of a reduction in force even though they were senior in length of service to some others in their respective departments whose employment was unaffected. There was no issue regarding the stated policy exception. The employees' claims were submitted to the jury, which returned a verdict for the plaintiff employees. In affirming the verdict, the Arkansas Supreme Court found that the handbook provision was " a model of clarity and definiteness" sufficient to alter the plaintiff employees at-will status.[15]

This case is readily distinguishable from *Crain*. Entergy's IRP contains no express language and certainly, no clear and definite language, purporting to alter the employment status of an employee who elects to dispute his termination by seeking a Panel review. Not only does the IRP say nothing about an employee's at-will employment status, it specifically says that the Panel "cannot establish or alter Company policy." To accept Binkley's argument would be to

---

[13] Plaintiff's suppl. response, Doc. No. 27.

[14] *Crain*, 305 Ark. at 568, 810 S.W.2d at 911.

[15] *Id.*, 305 Ark. at 571, 810 S.W.2d at 913.

permit the Panel, in effect, to alter Entergy's at-will policy. Such a result would be contrary to Entergy's stated policies and Arkansas law.

It is significant that Binkley participated in Entergy's IRP after he had already been terminated. Entergy's IRP functions as an appeal or grievance process. Courts have consistently held that a post-discharge grievance procedure can not alter an employee's at-will employment. *See Eddings v. City of Hot Springs*, 323 f.3d 596, 601 (8th Cir. 2003) ("Applying Arkansas law, we have repeatedly held that a handbook which provides a review procedure does not give rise to an expectation of continued employment, but rather only supports an expectation of a right to participate in the review procedure. . . . Because [plaintiff] was an employee at will, he enjoyed no protected right in continued employment and summary judgment was appropriate.").

It is interesting to note that Binkley seeks a remedy in this lawsuit which would, in effect, elevate his employment status by being terminated. In other words, Binkley would be in a better position because he was terminated than his co-workers who have never been terminated. This is clearly not the intent of Entergy's policies. Further, such a result would not promote good public policy.

The Court holds that Entergy's IRP did not expressly or implicitly alter Binkley's at-will employment status. This conclusion is fatal to Plaintiff's claim for relief in this lawsuit. Accordingly,

IT IS THEREFORE ORDERED THAT the Defendant Entergy Operations, Inc.'s motion for summary judgment (Docket No. 11) be, and it is hereby, GRANTED. Judgment will be entered separately.

IT IS SO ORDERED this  3rd  day of June, 2009.

>  /s/Garnett Thomas Eisele
> UNITED STATES DISTRICT JUDGE